(March 20, 1922.)

## FARMERS STATE BANK OF STAR, Respondent, v. EUGENE F. GRAY and LURA E. GRAY, Appellants.

[210 Pac. 1006.]

ATTACHMENT—AFFIDAVIT—WRIT—MOTION TO QUASH.

If an affidavit for attachment admits that one kind of security has been given for the debt sued on, it should negative the fact that any other of the forms of security mentioned in the statute has been given in order to entitle a plaintiff to a writ of attachment.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Raymond L. Givens, Judge.

Motion by defendants to quash an attachment. From order denying motion, defendants appeal. *Affirmed.*

Eldridge & Morgan, for Appellants.

The affidavit for attachment must state facts sufficient to conform to all the statutory requirements. If it fails to do so, the court is without jurisdiction to issue the writ. (*Kerns v. McAulay,* 8 Ida. 558, 69 Pac. 539; *Ross v. Gold Ridge Mining Co.,* 14 Ida. 687, 95 Pac. 821; *Knutsen v. Phillips,* 16 Ida. 267, 101 Pac. 596; 6 C. J. 146; C. S. 6780; *Heaton v. Panhandle Smelting Co., Ltd.,* 32 Ida. 146, 179 Pac. 510.)

Since the affidavit is false, in an important particular, the court was without jurisdiction to issue the writ. (*Murphy v. Montandon,* 3 Ida. 325, 35 Am. St. 279, 29 Pac. 851; *Willman v. Friedman,* 3 Ida. 734, 35 Pac. 37; *Vollmer v. Spencer,* 5 Ida. 557, 51 Pac. 609.)

Security at other times is not negatived. For its failure to negative such security or, if it existed, to state that it

Publisher's Note.

1. Consent to the sale of property by mortgagor after the chattel mortgage is given as a waiver of lien, see note in 43 L. R. A., N. S., 302.

had, without any act of the plaintiff, or the person to whom the security was given, become valueless, the amended affidavit is insufficient to support the writ. (*Union Bank & Trust Co. v. Himmelbauer*, 56 Mont. 82, 181 Pac. 332; *Continental Oil Co. v. Jamieson*, 53 Mont. 466, 164 Pac. 727.)

Martin & Martin, for Respondent.

There is no requirement in C. S., sec. 6780, that, when an affidavit for attachment states that there has been security for an indebtedness and that the same "has without any act of the plaintiff, or the person to whom the security was given, become valueless," it must also set up that there was no other security for such indebtedness.

"It is not necessary to allege any other facts than those specified in the statute." (*Ross v. Gold Ridge Mining Co.*, 14 Ida. 687, 95 Pac. 821; *Kerns v. McAuley*, 8 Ida. 558, 69 Pac. 539; *Knutsen v. Phillips*, 16 Ida. 267, 101 Pac. 596; *Barbieri v. Ramelli*, 84 Cal. 174, 24 Pac. 113; *Union Bank & Trust Co. v. Himmelbauer*, 56 Mont. 82, 181 Pac. 332.)

When the property mortgaged had been sold in accordance with the conditions of the mortgage and the proceeds applied upon the debt it became valueless as security by act or authority of the appellant and the respondent was not debarred from an attachment in this action to recover the amount remaining due and unpaid. (*Tappin v. McCabe*, 27 Ida. 402, 149 Pac. 460; *Williams v. Hahn*, 113 Cal. 475, 45 Pac. 815.)

As all the security for said note sued upon had prior to the bringing of this action been applied upon the original indebtedness by agreement of the parties, said security has become valueless, as security for the balance of said note, and thus respondent's affidavit for attachment is true. (*Wooddy v. Jamieson*, 4 Ida. 448, 40 Pac. 61.)

DUNN, J.—This is an appeal from an order of the district court of Ada county denying a motion to quash an attachment. The motion was made on the grounds: First, that the affidavit for attachment was in certain particulars untrue; second, that it was insufficient in that it appeared

therefrom that the payment of the promissory note upon which the action was brought was originally secured by a mortgage on personal property, and that a part of said property had been sold by agreement between the plaintiff and defendants; third, that the affidavit for attachment was insufficient in that it did not appear therefrom that the indebtedness from the defendants to the plaintiff had not been secured by any mortgage or lien upon real or personal property, or any pledge of personal property, or if originally secured, that such security had, without any act of the plaintiff, or the person to whom the security was given, become valueless.

The claim of appellants that the affidavit for attachment is untrue is based in part upon the fact that by agreement between the respondent and appellants a portion of this property was put up and sold at public sale, and that in this way it was the act of the respondent that rendered valueless the security held by respondent on such property as was sold. This claim is also based in part upon the contention of appellants that $400 of the amount now owing from appellants to respondent is secured by a title-retaining note held by the respondent.

C. S., sec. 6780, provides that the clerk of the district court must issue a writ of attachment upon receiving an affidavit by or on behalf of the plaintiff which, in addition to other matters not involved in this controversy, specifies that the payment of the indebtedness sued on "has not been secured by any mortgage or lien upon real or personal property, or any pledge of personal property, or if originally secured, that such security has, without any act of the plaintiff, or the person to whom the security is given, become valueless." In the case of *Knutsen v. Phillips,* 16 Ida. 267, 101 Pac. 596, the affidavit filed by the plaintiff stated that the payment of the indebtedness sued on had not been secured "by any mortgage or lien upon real or personal property," omitting the words "or any pledge of personal property," and this court held such affidavit insufficient, reversing the decision of the trial court. It thus appears that this court has held, in effect, that if there is

no security the plaintiff seeking a writ of attachment must by the affidavit negative every form of security mentioned in this statute. In this case the affidavit admits that the indebtedness sued on had been secured by a chattel mortgage, but does not negative any other of the forms of security mentioned in said statute. Appellants point out the fact that even though the security by chattel mortgage is admitted, this is not a denial that appellant has held a mortgage or lien upon real property or a pledge of personal property, and this is true. If it is necessary, in case there is no security, that the affidavit should set out specifically that the indebtedness sued on has not been secured "by any mortgage or lien upon real or personal property or any pledge of personal property," or words to that effect, no reason appears why the affidavit should not be equally specific as to the other forms of security mentioned in the statute when it contains an admission that the appellant has had one kind of security mentioned therein. In such case it should clearly appear from the affidavit that the plaintiff had no other security than that admitted in the affidavit. The original affidavit was fatally defective in this respect.

After the motion to quash was filed and served an amended affidavit for attachment was filed by which it was attempted to meet the objections raised by appellants. The amended affidavit recites "that the payment of said note at the time of its execution was secured by a chattel mortgage upon certain personal property, dated October 23, 1920, but that prior to the commencement of this action all of the personal property described in such mortgage had, by agreement between the plaintiff and the defendants, been sold by the defendants and the moneys received therefor applied upon the payments made upon said note as above stated, and thus by the sale of said property so made by the defendants, the total security for such note has without any act of the plaintiff, the person to whom the security was given, become valueless; that the balance due on said note, to wit: Eleven Hundred Fifteen and 75/100 Dollars ($1115.-75) and the interest thereon from May 20th, 1921, is not,

and at the date of the commencement of this action was not, secured by any mortgage or lien upon real or personal property, or any pledge of personal property.''

The question is now whether the statement in the amended affidavit that by the sale of the property covered by the chattel mortgage ''the total security for such note has . . . . become valueless'' meets the requirement that the affidavit shall negative all the forms of security mentioned in the statute other than the one admitted. While the statement might be made more explicit than it is, we think that by fair interpretation it means that the note in question has not been secured in any other manner than by the chattel mortgage. The amended affidavit is in this regard sufficient. The remainder of the statement above quoted may be regarded as surplusage.

It has been held that a sale of personal property pledged as security for the payment of a note and the application of the proceeds to the note secured does not defeat the right of a plaintiff to have a writ of attachment on the ground that the security has become valueless by act of the plaintiff. (*Williams v. Hahn,* 113 Cal. 475, 45 Pac. 815.) In the case at bar the plaintiff had a right to take the personal property covered by the chattel mortgage and sell it according to law and we can see no reason why a sale made by mutual agreement and without expense would be more open to the objection urged than the sale in the case of *Williams v. Hahn, supra.* If there were other parties who claimed a lien on the property an objection from them would rest upon entirely different grounds from those that can be urged by appellants who were directly interested and who authorized the sale. Respondent, as we view it, was no more an actor in the case of the private sale which was made by agreement of the parties than it would have been in the foreclosure proceeding strictly in conformity with the statute.

So far as the claim is concerned that $400 of the debt for which attachment was levied is secured by a title-retaining note, we think it clearly appears that said $400 is no part of the indebtedness sued for in this action. The order of

the trial court denying the motion to quash the writ of attachment is affirmed. Costs to respondent.

McCarthy and Lee, JJ., concur.

(July 1, 1922.)

ON REHEARING.

DUNN, J.—Appellants contend that the court committed several errors in the original opinion, but we think it necessary to discuss only one of such alleged errors, which is numbered 7 and reads as follows:

"The court erred in failing to hold that a portion of the mortgaged property, to wit, a cow, three horses, a wagon and an automobile, were not sold and were still subject to the mortgage, which was unsatisfied, at the time of the issuance and levy of the writ of attachment; that if this property was transferred from appellants to respondent and from respondent to appellants and the lien of the mortgage was thereby destroyed, it was waived by respondent's act, and in failing to decide that whether the debt was still secured by the mortgage on the above-mentioned property, or said security had been so waived, the attachment is violative of C. S., sec. 6779, subd. 1, and must be quashed."

All of the property covered by the chattel mortgage was sold by agreement of appellant and respondent on the 17th day of May, 1921, except the cow, the horses, the wagon, and the automobile mentioned above. On May 20, 1921, respondent took a bill of sale of this remnant of said mortgaged property and gave appellants credit therefor in the sum of $400 on the balance of $1,515.75 remaining due to respondent on the note of appellants for $2,800. Respondent on the same day sold back to appellants this remnant of the mortgaged property and took therefor a title-retaining note for $400. After the sale of the greater portion of the mortgaged property by agreement on the 17th day of May, 1921, respondent undoubtedly lost its right to enforce its lien against the property sold, but between the 17th and 20th days of May, 1921, its balance of $1,515.75 was se-

cured by its mortgage on the cow, the three horses, the wagon and the automobile. When it became the purchaser of these the lien of its mortgage became merged in its title, and upon its sale of this property to appellants and its taking from them a title retaining note for $400, so far as this property was concerned it substituted another form of security for the chattel mortgage. It no longer held security for the balance of $1,115.75, which remained after crediting on the note the $400. But can it be said that such security as it had after the 17th day of May had become valueless without any act of respondent? We think not. It seems clear to us that by this transaction the respondent became an actor, and waived its security for the balance of this note and that therefore it was not entitled to a writ of attachment. For the reasons stated the former decision of this court and the order of the trial court denying the motion to quash the attachment are reversed. Costs to appellant.

Rice, C. J., and McCarthy, J., concur.

Budge and Lee, JJ., dissent.


(December 4, 1922.)

ON SECOND REHEARING.

(Syllabus to Majority Opinion.)

1. Where a debt has been secured by chattel mortgage and the property covered by the mortgage has been sold by the mortgagor with the consent of the mortgagee, the security has become valueless without act of the mortgagee, within the meaning of C. S., sec. 6,780.

2. An affidavit for attachment which, after reciting that the debt had been originally secured by a chattel mortgage and the mortgaged property sold by the mortgagor with the consent of the mortgagee, and the proceeds applied to the mortgage debt, states: "and thus by the sale of said property so made by the defendants, the total security for such note has without any act of the plain-

tiff, the person to whom the security was given, become valueless," sufficiently negatived the existence of any other security than that given by the chattel mortgage.

RICE, C. J.—The remedy by attachment is purely statutory. It is a harsh remedy, in that it divests a person of the possession and control of his property before judgment and it may be upon a disputed claim. Although a harsh remedy, it nevertheless serves a useful and proper purpose. The effort should be to construe the statute so as to effectuate the real purpose of the legislation. The grounds for attachment against a resident, required to be set out by affidavit, are as follows:

"That the defendant is indebted to the plaintiff (specifying the amount of such indebtedness over and above all legal setoffs or counterclaims) and whether upon a judgment or upon a contract for the direct payment of money, and that the payment of the same has not been secured by any mortgage or lien upon real or personal property, or any pledge of personal property, or if originally secured, that such security has, without any act of the plaintiff, or the person to whom the security was given, become valueless." (C. S., sec. 6780.)

The claim, therefore, must be one founded upon a contract for the direct payment of money, the payment of which has not been secured in any degree by any of the means specified in the statute. If it has been so secured, however inadequately, attachment cannot issue, unless such security has, without any act of the plaintiff, or the person to whom the security was given, become valueless. The security may become valueless by reason of the physical destruction of the property hypothecated or pledged, or the security as such may become valueless and lost by the removal of the property from the jurisdiction of the court, or by its concealment or theft, or perhaps by various other means. In all these instances, clearly it is without any act of the claimant or person to whom the security is given.

It has been held, also, that when the security has been exhausted by a foreclosure sale, and the proceeds applied upon the secured debt, attachment is available in an action

for the unpaid balance. (*Williams v. Hahn,* 113 Cal. 475, 45 Pac. 815; *Union Bank & Trust Co. v. Himmelbauer,* 56 Mont. 82, 181 Pac. 332. And see *Bowman v. Wade,* 54 Or. 347, 103 Pac. 72.)

When a creditor takes security for his debt, he waives his statutory right of attachment in an action for the recovery thereof. The security becomes the primary source to which he must look for the recovery of the indebtedness. (*Rein v. Calloway,* 7 Ida. 634, 65 Pac. 63.) By a foreclosure sale, the property of course becomes valueless as security. Although a foreclosure requires action on the part of the creditor or the person holding the security, the theory appears to be that the exhaustion of the security by foreclosure is by virtue of the law and through the authority of the mortgagor or pledgor. The mortgagee or pledgee could not voluntarily release the lien without the consent of one having given the security, and thus restore the statutory right of attachment. (*Rein v. Calloway, supra; Barbieri v. Ramelli,* 84 Cal. 154, 23 Pac. 1086; *Hibernia Sav. & Loan Soc. v. Thornton,* 109 Cal. 427, 5 Am. St. 52, 42 Pac. 447.) The expressions in the case of *Wooddy v. Jamieson,* 4 Ida. 448, 40 Pac. 61, to the contrary should be overruled, and the case of *Parberry v. Woodson Sheep Co. et al.,* 18 Mont. 317, 45 Pac. 278, should not be followed. But where the mortgagor sells property covered by a mortgage, with the consent of the mortgagee, although such sale renders the security valueless to the mortgagee, it should not be held to have been accomplished by act of the mortgagee, any more than the foreclosure of the mortgage is held to render the security valueless by his act. It is the sale by the mortgagor, and not the consent of the mortgagee, which renders the security valueless.

I am therefore of the opinion that the sale of the property, as disclosed by the affidavits in this case, did not deprive respondent of its right of attachment; that the affidavit required by the statute, to the effect that the security had become valueless without any act on its part, could truthfully be made on its behalf.

I am of the opinion, however, that the amended affidavit is insufficient in substance to justify the attachment. The affidavit states: "Thus by the sale of said property so made by the defendants the total security for such note has, without any act of the plaintiff, the person to whom the security was given, become valueless; that the said balance due on said note, to wit, $1,115.75, and interest thereon from May 20, 1921, is not, and at the date of the commencement of this action was not secured by any mortgage or lien upon the real or personal property, or any pledge of personal property." I think that the statement in the affidavit that the total security for such note has become valueless cannot reasonably refer to any other security than the mortgage referred to in the affidavit. It does not negative the existence of other security beside the mortgage. (*Knutsen v. Phillips,* 16 Ida. 267, 101 Pac. 596.) The further statement that the balance due is not and at the date of the commencement of the action was not secured by any lien on real or personal property or pledge of personal property, is not sufficient to meet the requirements of the statute. It does not negative the existence of security between the date of the sale and the commencement of the action. The space of time intervening, it is true was short, but there was an intervening time which must be covered in order to comply with the statutory requirement. (*Continental Oil Co. v. Jamieson,* 53 Mont. 466, 164 Pac. 727.)

I am of the opinion, therefore, that the order should be reversed.

BUDGE, J.—I concur in the conclusion reached by Chief Justice Rice "that the sale of the property as disclosed by the affidavit in this case did not deprive respondent of its right of attachment and that it could truthfully make the affidavit required by the statute to the effect that the security had become valueless without any act on its part." I am, however, out of accord with that portion of the opinion which holds "that the amended affidavit is insufficient in substance to justify the attachment." The Chief Justice says, if I correctly understand the language used in his

opinion, that the amended affidavit would be sufficient in substance, had the scrivener inserted therein in addition to the language used, words showing that there was no other security besides the mortgage. The amended affidavit, as I read it, clearly shows that there never was at any time either before or after the action was commenced, security given other than that described in the mortgage. Affiant in his amended affidavit states "that the balance due on said note *is not and at the date of the commencement of this action was not secured by any mortgage or lien upon the real or personal property or any pledge of personal property* . . . . but that prior to the commencement of this action all of the personal property described in this mortgage had, by agreement between plaintiff and defendants, been sold by defendants and the money received therefrom applied upon the payment made upon the said note . . . . and thus by the sale of said property so made by defendants the *total* security for such note has, without any act of the plaintiff, . . . . become valueless." The foregoing statement carries no other conviction to the mind and can mean nothing other than that the total security given to secure the indebtedness became extinguished, and, as Chief Justice Rice correctly holds, "without any act of the plaintiff." The total security means the entire security, and as used in this connection that the debt sued upon was not secured at the time of the commencement of the action by any mortgage or lien upon real or personal property, and clearly negatives all forms of security mentioned in the statute. In the original majority opinion, written by Justice Dunn, he says: "That by fair interpretation [of the affidavit] it means that the note in question was not secured in any other manner than by the chattel mortgage, which security became valueless without any act of the plaintiff and at the commencement of the present action was not secured by any mortgage or lien upon real or personal property or any pledge of personal property and that the amended affidavit in this regard was sufficient and should be upheld." The construction placed upon the affidavit by Chief Justice Rice is too narrow and technical. An affidavit is not a pleading

and is therefore not subject to the same technical construction that may be justified in construing a pleading. As is stated by this court in the case of *Knutsen v. Phillips*, 16 Ida. 267, 101 Pac. 956: "An affidavit for writ of attachment must be liberally construed and must be held sufficient if it appears that the language therein used is substantially equivalent to that used in sec. 4303, Revised Codes (now C. S., sec. 6780)." (3 Ency. Pleading & Practice, 10.) The important fact to be shown by the affidavit is that the plaintiff has no security for his claim. To hold otherwise operates to defeat the intent and purpose of the statute.

Under the provisions of C. S., sec. 6780, subd. 1, the legislature has provided for attachment in two distinct classes of cases. The affidavit provided for is different in each class. In neither class is one required to state the facts stated in the other class. The first class of cases is where the debt has not been secured. There the affidavit must state "that the payment of the same has not been secured by any mortgage or lien upon real or personal property or any pledge of personal property." This is the class of case covered by *Knutsen v. Phillips, supra.* The other class is where the debt has been secured and there the affidavit must state the fact that security has been given and also that such security has, without any act of the plaintiff or the person to whom the security was given, became valueless. In this latter class it is not necessary to state that the debt "has not been secured by any mortgage or lien upon real or personal property or any pledge of personal property." In the case of *Vollmer v. Spencer*, 5 Ida. 557, at page 561, 51 Pac. 609, this court says: "When a mortgage has been given to secure a debt and the creditor thereafter sues to recover the debt, he must, in order to have the benefit of an attachment, state in his affidavit therefor that such mortgage was given and that such security has, without any act of the plaintiff or person to whom it was given, become valueless."

In the case of *Heaton v. Panhandle Smelting Co.*, 32 Ida. 146, 179 Pac. 510, this court said: "That the statute provided for two distinct grounds for attachment and the affi-

davit should cover but one of such grounds.'' In the case last above quoted the affidavit covered both grounds and for that reason, the affidavit being in the alternative, was held to be bad. In the instant case it is insisted that the affidavit is bad because it fails to state that there was no security other than that contained in the chattel mortgage which had not been exhausted. Even if this be required, we think the affidavit does clearly show it. In the case last above cited it was held to be bad because it was impossible to ascertain therefrom whether security for the debt had been given or if given, had, without any act of the plaintiff or person to whom it was given, become valueless. In this case it is clear that the security given had all been exhausted and that there was no other. The purpose of the legislature in providing for amendments to affidavits on attachment is not in harmony with the technical construction sought to be placed upon the language used in the amended affidavit under consideration. The intent of the legislature as expressed in the statute is therefore defeated by judicial construction.

The order of the trial court denying the motion to quash the writ of attachment is affirmed. Costs awarded to respondent.

McCarthy and Lee, JJ., concur.

DUNN, J.—While I adhere to the views expressed on the first rehearing, my inclination is to hold, regardless of the sufficiency of the affidavit, that respondent, having taken security for the debt due it and having had the benefit of such security, is not entitled to attach. The clear intent of the legislature, in my opinion, was, in the first instance, to deny the right of attachment to a plaintiff who had taken security for a debt due him, but to make an exception in favor of a plaintiff when his security had become valueless without his act or that of the person to whom the security was given. There are many ways in which security might become valueless, some of which are suggested in the opinion of Chief Justice Rice, such as physical destruction of the

property, removal from jurisdiction of the court, etc. It was to protect the plaintiff against such misfortunes as these and many others that might occur to his security without his act or that of the person to whom the security was given that the law made the exception mentioned, entitling him to attach after he had taken security for his debt. To hold that one who has had security and has realized on it by the sale of the debtor's property comes within the expression that his "security has become valueless" is to place a construction upon such language wholly unwarranted, it seems to me. No such understanding can be had if we confine ourselves to the ordinary meaning of the words used in subdivision 1 of section 6780.